UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JESSE DENHAM,<br><br>　　　　　　Defendant. | CASE NO. CR25-5045-BHS<br><br>ORDER |

THIS MATTER is before the Court on defendant Jesse Denham's motion to suppress evidence. Dkt. 31.

Denham is charged of conspiracy to distribute controlled substances and possession of controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Dkt. 35.

ORDER - 1

1         In April 2024, while Denham was on supervised release[1], the Thurston County

2 Narcotics Task Force found a handgun in Denham's car. Dkt. 41-1, Decl. of McIver at 1.

3 The Task Force agreed not to pursue unlawful firearm possession charges against

4 Denham in exchange for his cooperation as a confidential informant. *Id.* Denham agreed

5 to refrain from unlawful activity and to provide the Task Force with information about

6 individuals he had purchased drugs from. *Id.* at 2. The agreement also stated that if

7 Denham failed to complete its terms, charges may be forwarded for prosecution. *Id.*

8         From August to October 2024, under the Task Force's direction, Denham made

9 several controlled purchases of methamphetamine from two individuals, "Tony" and his

10 brother "Keven." *Id.* On November 19, 2024, while surveilling Keven, Task Force

11 officers observed Denham getting out of Keven's car. *Id.* at 3. Denham had claimed he

12 "hadn't had communication with either Tony or Keven for weeks, and [that he] did not

13 have either of their current phone numbers," leading the Task Force to suspect that

14 Denham was unlawfully buying drugs from Keven. *Id.*

15         Task Force officers immediately began surveilling Denham's car. He appeared to

16 realize he was being followed, reversed the direction he was going, and began driving at

17 50 miles per hour, well over the posted speed limit. *Id.* at 4. Denham arrived at Fortune

18 Casino, parked his car, and jogged into the casino's entrance. Dkt. 33, Exhibit A. Casino

19 surveillance footage shows Denham entering the casino with his hands resting in his

---

[1] Denham was convicted of bank fraud, aggravated identity theft, and felon in possession of a firearm in 2019. No. 17-5379-BHS, Dkt. 37. His supervision began in 2020. *Id.*, Dkt. 90. There was a pending arrest warrant for Denham's supervised release violations that this Court issued in July 2023.

ORDER - 2

sweatshirt's front pocket. *Id.* The pocket appears to contain a bulge aside from his hands. Denham entered the bathroom and exited seven seconds later. *Id.*, Exhibit B. Officers Shenkel and Sandoval handcuffed Denham in the casino foyer, frisked him, and placed him in the back of a police vehicle around 12:19 AM. *Id.*, Ex. C. The officers "confirmed with Casino security no one else entered the restroom since Denham." Dkt. 41 at 5. At 12:26 AM, Lieutenant McIver found, in the bathroom garbage bin, a drawstring bag containing approximately two pounds of suspected crystal methamphetamine. *Id*. The officers read Denham his Miranda rights. He then admitted there was fentanyl and an inoperable "pen gun" in his car, and he gave signed consent to a search of his car. Dkt. 41-1 at 6; Dkt. 31 at 9.

    Denham moves to suppress his statements[2] and evidence obtained from the search of his car, as well as the "baggies containing alleged methamphetamine seized from the casino bathroom." Dkt. 31 at 9; Dkt. 68 at 1. He argues the manner and length of his warrantless seizure were not narrowly tailored to an investigatory *Terry* stop, but instead an unlawful arrest. Dkt. 31 at 3–7. He argues his statements and the search of his vehicle are fruits of this unlawful arrest and therefore inadmissible. *Id.* at 9.

---

[2] Denham subsequently filed a motion to suppress statements made on November 19–20, 2024, including his consent to search, Dkt. 74. In its response, Dkt. 89, and in a hearing the Court conducted on September 16, 2025, the Government made clear that it would not rely at trial on Denham's statements regarding consent to search his car and statements related to contents of his car. *See* Dkt. 97 at 4–5. Dkt. 74 has been denied as moot. This Order therefore addresses only Denham's motion to suppress the physical evidence obtained from the search of his car.

ORDER - 3

1    The Government opposes Denham's motion on the grounds that it had probable

2  cause to detain him and search his vehicle. Dkt. 41 at 10–12. It argues Denham validly

3  consented to the search of his car, and even if not, the officers had probable cause to do

4  so under the automobile exception. *Id.* at 12. The Government also contends the seized

5  methamphetamine cannot be suppressed because Denham abandoned it, and it was not

6  causally connected to his arrest. *Id.* at 6; Dkt. 82.

7    Denham replies that he retained a privacy interest in the suspected

8  methamphetamine and therefore did not abandon it. Dkt. 68 at 3–4. He argues his

9  placement of the "baggies . . . at the bottom of the garbage can with other garbage placed

10 on top of it," *id.* at 4, was a "concerted effort to disguise the contents of the trash can,

11 indicating subjective and objective privacy interest," Dkt. 86 at 3.

12   The Court heard from Denham and the parties in an evidentiary hearing on August

13 19, 2025. The parties submitted additional briefing on the issue of abandonment, Dkts.

14 82, 86.

### I. DISCUSSION

16   The Fourth Amendment protects the right of the people to be secure in their

17 persons, houses, papers, and effects against unreasonable searches and seizures. U.S.

18 Const. Amend. IV. The Fourth Amendment permits law enforcement to conduct brief

19 investigative stops when they have "reasonable suspicion that a person may be involved

20 in criminal activity." *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 524 U.S. 177, 185 (2004)

21 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "Reasonable suspicion 'exists when an officer

22 is aware of specific, articulable facts which, when considered with objective and

reasonable inferences, form a basis for particularized suspicion.'" *United States v. Steinman*, 130 F.4th 693, 709 (9th Cir. 2025) (quoting *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015)).

During an investigative stop, the officer's action must be "justified at its inception and reasonably related in scope to the circumstances which justified the interference in the first place." *Hiibel*, 524 U.S. at 185 (citation omitted). The stop must be temporary, though it may be prolonged if "justified by reasonable suspicion based on the information available at that juncture." *Steinman*, 130 F.4th at 704.

"No litmus-paper test exists for determining when a seizure exceeds the bounds of an investigative stop." *United States v. Charley*, 396 F.3d 1074, 1080 (9th Cir. 2005) (citation omitted). Instead, "whether an investigative detention has ripened into an arrest" is a fact-based inquiry that depends on the "totality of the circumstances." *Id.*; *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002). The Ninth Circuit has upheld a wide range of investigative methods as reasonable in the circumstances. *Charley*, 396 F.3d at 1080. For example, even when officers draw their guns, handcuff a suspect, or place a suspect into the back of a patrol car, an investigative stop does not automatically turn into an arrest. *Gallegos*, 308 F.3d at 991 (citing *United States v. Buffington*, 815 F.2d 1292, 1300 (9th Cir. 1987); *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056–58 (9th Cir. 1995); *United States v. Parr*, 843 F.2d 1228, 1229–32 (9th Cir. 1988)). The officers must have "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Id.* at 992.

1    If a stop turns into an arrest, the officers must have probable cause. *Florida v.*
2  *Royer*, 460 U.S. 491, 500 (1983). Probable cause exists when "facts and circumstances
3  within the officer's knowledge that are sufficient to warrant a prudent person, or one of
4  reasonable caution, in believing, in the circumstances shown, that the suspect has
5  committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*,
6  443 U.S. 31, 37 (1979).

7    The events leading up to Denham's detention at Fortune Casino, including his
8  work as a confidential informant, interaction with Keven, and erratic and suspicious
9  driving, support the Government's reasonable suspicion that Denham was involved in
10 criminal activity. Officers Shenkel and Sandoval's decision to handcuff Denham was
11 reasonable to mitigate his flight risk. *See Washington v. Lambert*, 98 F.3d 1181, 1189
12 (9th Cir. 1996) ("a reasonable possibility of danger or flight" is a factor in allowing
13 "intrusive means" to effectuate an investigative stop). The officers were diligent and
14 quick in investigating the casino bathroom while he was detained in the back of the
15 police car. From the facts learned in the brief investigation culminating in the discovery
16 of the suspected methamphetamine, the officers had probable cause to arrest Denham.

17    While Denham now challenges the validity of his consent to search his vehicle,
18 Dkt. 74, the Government persuasively contends the search was nonetheless valid under
19 the automobile exception to the Fourth Amendment's warrant requirement. Pursuant to
20 this exception, law enforcement may search an automobile and the containers within it
21 without a warrant "where they have probable cause to believe contraband or evidence is
22 contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). Probable cause is evaluated

in light of the totality of the circumstances. *United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012).

Here, the officers developed probable cause to suspect Denham's car contained contraband or evidence once they discovered the suspected methamphetamine in the bathroom trash. Prior to the discovery, the officers observed Denham meeting with Keven—a known drug dealer with whom Denham had a pre-existing methamphetamine purchasing relationship. The officers followed Denham's car to the casino where Denham got out and jogged through the front entrance. The casino's video surveillance showed Denham with a bulge in his sweatshirt entering the casino restroom. Denham exited a few seconds later without the bulge. No other person entered the restroom before the officers' found drugs in the trash can. Under the totality of the circumstances, the Court concludes that the officers had probable cause to search Denham's vehicle based on the "fair probability" that drugs or other evidence might be found inside.

As for Denham's claim that he did not abandon the suspected methamphetamine because of his "concerted effort" to disguise it, the Court notes that this argument was raised by counsel, without any supporting evidence. Even if properly raised, abandonment rests on "'whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.'" *United States v. Veatch*, 674 F.2d 1217, 1220 (9th Cir. 1981) (quoting *United States v. Jackson*, 544 F.2d 407 (9th Cir. 1976)). The Court is persuaded by the Government's argument that Denham did not have any reasonable expectation of privacy in the suspected methamphetamine once he placed it in a public trash can. Dkt. 82; *see*

1  *California v. Greenwood*, 486 U.S. 35, 41 (1988) (There is no reasonable expectation of
2  privacy "in trash left for collection in an area accessible to the public."); *United States v.*
3  *Dela Espriella*, 781 F.2d 1432, 1437 (9th Cir. 1986). The Court concludes Denham
4  abandoned the suspected methamphetamine and does not have standing to challenge its
5  seizure.

6  On these grounds, Denham's motion as to the admissibility of the weapons and
7  drugs seized from his car, and the methamphetamine seized from the casino restroom is
8  **DENIED**.

9  **IT IS SO ORDERED.**

10  Dated this 10th day of October, 2025.

BENJAMIN H. SETTLE
United States District Judge