UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>JESSE DENHAM,<br><br>　　　　　　　Defendant. | CASE NO. CR25-5045-BHS<br><br>ORDER |

THIS MATTER is before the Court on defendant Jesse Denham's motion to dismiss his indictment. Dkt. 113.

Denham was charged in a superseding indictment with conspiracy to distribute controlled substances (Count 1), possession of controlled substance with intent to distribute (Count 2), possession of a firearm in furtherance of a drug trafficking crime, (Count 3), and unlawful possession of a firearm (Count 4). Dkt. 35. Denham moves to dismiss,[1] contending that the Government violated his due process rights to present a

---

[1] Although Denham moves to dismiss the indictment generally, the Court construes the motion as limited to counts 1 and 2, which pertain to Denham's alleged activities at the casino. This order does not address Denham's separate motion to dismiss counts 3 and 4, which will be resolved in a separate order.

ORDER - 1

complete defense by failing to preserve a casino's video surveillance footage that may have been potentially useful to his defense. Dkt. 113 at 7.

For reasons stated below, Denham's motion to dismiss counts 1 and 2, Dkt. 113, is denied. The Court concludes that the casino's surveillance video footage did not have sufficient exculpatory value, and in any event, the Government did not destroy it in bad faith. Therefore, dismissal is not warranted.

## I. BACKGROUND

The Court has described the factual context of this case in prior Orders, Dkts. 67, 99, 100, and in the interest of brevity, provides only the facts necessary to decide this motion. On November 19, 2024, the Thurston County Narcotics Task Force was conducting surveillance on a drug trafficking target named Keven. Dkt. 41-1 at 3. While watching Keven, Task Force officers observed Denham get out of Keven's car, walk to his own car, and then drive away. *Id.* The officers immediately began surveilling Denham's car. *Id.* Denham appeared to realize he was being followed, reversed direction, and began driving at 50 miles per hour, well over the posted speed limit. *Id*. at 4

Denham arrived at Fortune Casino, parked his car, and jogged into the casino's entrance. Dkt. 33, Ex. A. Casino surveillance footage shows Denham entering the casino with his hands resting in his sweatshirt's front pocket. *Id.* The pocket appears to contain a bulge aside from his hands. Denham entered the bathroom and exited seven seconds later. *Id.*, Ex. B. Officer Shenkel entered the casino "seconds" after Denham. *Id.* Shenkel contacted casino security who pointed him towards the restroom, where he observed Denham walking away. *Id.* Officers Shenkel and Sandoval handcuffed Denham in the

casino foyer, frisked him, and placed him in the back of a police vehicle around 12:19 AM. *Id.*, Ex. C. The officers confirmed with casino security that "no one had entered the casino restroom since Denham." Dkt. 41-1 at 5. The officers then searched the restroom. *Id.* At 12:26 AM, Lt. McIver found a drawstring bag containing approximately two pounds of suspected crystal methamphetamine in the bathroom garbage bin. *Id.* The investigators obtained casino surveillance video covering the minute before and the minute after Denham entered the restroom, which shows another man leaving the restroom shortly before Denham went in. Dkt. 33, Ex. B.

On March 12, 2025, Denham was charged with possession of a controlled substance with intent to distribute based on his alleged actions on November 19, 2024, as well as unlawful possession of a firearm based on a separate prior incident. Dkt. 1. A grand jury later returned a superseding indictment charging Denham with conspiracy to distribute controlled substances (Count 1), possession of controlled substance with intent to distribute (Count 2), possession of a firearm in furtherance of a drug trafficking crime, (Count 3), and unlawful possession of a firearm (Count 4). Dkt. 35.

Denham now moves to dismiss counts 1 and 2, contending that the Government's failure to preserve video footage of all other people who entered the casino and the bathroom that day violated Denham's due process rights to present a complete defense. Dkt. 113 at 3. In the alternative, Denham requests that the Court preclude the Government from introducing any portions of the casino's surveillance video and any testimony about what was captured on that video. Dkt. 121 at 3. The Government counters that the casino surveillance footage was never in the custody of law enforcement

and did not have apparent exculpatory value. Dkt. 118 at 3–4. It argues that even if the officers failed to preserve the video footage, Denham cannot prove that the officers acted in bad faith. *Id.* at 6.

## II. DISCUSSION

The Due Process Clause requires that criminal defendants be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). The Government violates a defendant's due process rights by failing to preserve evidence that "possess[es] an exculpatory value that was apparent before the evidence was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. For evidence that is "potentially useful," as opposed to materially exculpatory, the defendant must also show the Government acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). "The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015).

Denham relies on *Zaragoza-Moreira*, in which the Ninth Circuit determined that the government acted in bad faith after destroying evidence it knew could be exculpatory. In that case, the defendant, Zaragoza, was apprehended at the U.S./Mexico border for carrying drugs into the United States. *Id.* at 975. After she was arrested, Zaragoza told a homeland security agent that she had been coerced into transporting drugs by members of a drug cartel and that she had tried to get the border authorities attention in the security line by "making a lot of noises." *Id.* She told the agent that she had also stood in line

1  earlier that day but that cartel members had taken her out of line because she purposefully
2  tried to loosen the drugs packaged against her body. *Id.* at 976. According to Zaragoza,
3  she "'wiggled around, 'patted her stomach,' and 'threw her passport on the ground' to
4  draw attention to herself." *Id*.
5      Within a week of the Zaragoza's arrest, her attorney sent a letter to the Assistant
6  United States Attorney requesting that "any and all videotapes . . . which relate to the
7  arrest or the events leading to the arrest [] in this case be preserved." *Id.* However, after
8  Zaragoza was indicted by a jury of one count of importing heroin and one count of
9  importing methamphetamine, Zaragoza's attorney discovered that the security line video
10 footage had automatically been recorded over. *Id.* Zaragoza moved to dismiss her
11 indictment due to the government's destruction of evidence. *Id.* The district court denied
12 the motion, but the Ninth Circuit reversed, holding that the government acted in bad faith.
13 *Id.* at 982. The court explained that Zaragoza had described her actions during her initial
14 interview with the border patrol agent, so the agent necessarily was aware that the video
15 footage was potentially useful evidence for Zaragoza's defense. *Id.* at 981. In addition,
16 Zaragoza's attorney immediately requested that video evidence be preserved. *Id.* The
17 Court concluded that because the agent knew of the potential usefulness of the video
18 footage and acted in bad faith by failing to preserve it, Zaragoza's due process rights
19 were violated. *Id.* at 982.
20     Denham argues that, as in *Zaragoza*, the Government acted in bad faith by failing
21 to preserve potentially useful video footage. Dkt. 113 at 7. He asserts that the casino's
22 deleted video footage may have shown other individuals entering the bathroom carrying

bags or with noticeable bulges in their clothing. *Id*. He contends that the exculpatory value of the footage—showing that someone else may have left drugs in the casino bathroom—was apparent because the Government knew Denham was never seen with the backpack containing drugs and that someone else might have been wearing it. *Id*. Denham further asserts that because the Government did not indict him until after the video evidence had been permanently deleted, he had no "opportunity to independently obtain the evidence." *Id*. at 6–7.

The Government responds that nothing about Denham's statements or the circumstances surrounding the investigation put the investigators on notice that the casino's surveillance video would result in anything of exculpatory value. *Id*. It further contends that, at most, the investigators were merely slow to obtain evidence of potentially speculative value of which they had not been directly put on notice. *Id*.

The Government relies on *United States v. Stanley*, 859 Fed. Appx. 104 (9th Cir. 2021). There, the Ninth Circuit held that the district court did not abuse its discretion by declining to give the Defendant's requested adverse-inference instruction based on the officers' alleged failure to preserve evidence from the defendant's backpack and bedroom. *Id*. at 105. The Court explained that the evidence was not "lost or destroyed" while in the government's custody, but rather because the Government failed to seize it. *Id*. The Court reiterated that "police do not have an 'undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *Id*. (quoting *Youngblood*, 488 U.S. at 58)).

The Government also contends that the casino's video footage for the entire day prior to Denham's arrest did not have any apparently exculpatory value. Dkt. 118 at 4. It contends that it is undisputed that other individuals used the casino's public bathroom that day, and that speculation about what those people might have been wearing is insufficient to support a claim for destruction of evidence. Dkt. 118 at 5–6. The Government asserts that the detective's actions in preserving only a few minutes of video is reasonable in light of the totality of the circumstances, including that Denham met with a target of investigation in a drug case, led investigators on a high speed chase, jogged into the casino, and then was seen coming from the direction of the restroom a few seconds later. *Id.* at 5.

The Court agrees with the Government. Unlike in *Zaragoza*, the officers here had no notice of the potential exculpatory value of an entire day's worth of casino surveillance footage. Denham made no such claim at the time of his arrest and nothing about the circumstances of his arrest put the investigators on notice that video footage of others entering the bathroom that day would be of any exculpatory value.[2] In addition, as in *Stanley*, there is no dispute that the casino's video footage was not destroyed while in the Government's custody. The casino controlled its own surveillance video, which was routinely destroyed after 90 days. Police do not have a duty to "to preserve all material

---

[2] It is unreasonable to conclude that the officers should have asked for the casino's surveillance footage covering the entire day. The officers knew Denham was in the bathroom for only seven seconds, they were told by a security officer that no one had entered the bathroom since Denham entered, and it is highly unlikely that anyone else would have abandoned two pounds of methamphetamine buried in a trash can.

ORDER - 7

1 | that might be of conceivable evidentiary significance in a particular prosecution."

2 | *Youngblood*, 488 U.S. at 58.

3 |     In any event, there is no indication that the evidence was destroyed in bad faith.

4 | "Bad faith requires more than mere negligence or recklessness." *United States v. Flyer*,

5 | 633 F.3d 911, 916 (9th Cir. 2011). This requirement is intended to "limit[] the extent of

6 | the police's obligation to preserve evidence to reasonable bounds and confines it to that

7 | class of cases where the interests of justice most clearly require it." *Youngblood*, 488 U.S.

8 | at 58. Here, there is no evidence that police knew that the casino's surveillance footage

9 | had apparent exculpatory value at the time it was destroyed or that the Government acted

10 | in bad faith by failing to preserve it. Denham's due process claim fails. Denham's motion

11 | to dismiss his indictment, Dkt. 113, is **DENIED**.

12 |     **IT IS SO ORDERED.**

13 |     Dated this 15th day of December, 2025.

BENJAMIN H. SETTLE
United States District Judge